

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 18, 1947

Hon. C. A. Pounds
County Attorney
Chambers County
Anahuac, Texas

Opinion No. V-381

Re: Legality of certain
sales to be made by
the county auditor.

Dear Sir:

Your request for an opinion from this office
on the above subject matter is, in part, as follows:

"Is it illegal for a County Auditor
to:

"1.  Sell services to the County--
such as telephone services.

"2.  Sell Officer's Bonds to County
Officers.

"3.  Sell material and supplies to
the County--such as electrical
equipment.

"4.  To pay a Brother-in-law for ser-
vices rendered to the County.

"5.  Sell County Insurance on County
Employees, County Buildings, Pub-
lic Liability Insurance on County
owned trucks.

In answer to our request for additional infor-
mation, you furnished us the following:

"Relative to question No. 1:

"So far as I know, the County Auditor is
the owner of the local telephone exchange, and
has been for a number of years. However, his
son is now assisting in the operation of the
business. What authority he exercises in the
management of the business or what financial
interest he has, if any, I am unable to say.

This is the only telephone exchange located in the town of Anahuac, Texas.

"This local telephone exchange furnishes telephone service to the county. The telephone company bills the county each month for the amount of services furnished during the month. The Auditor approves these accounts just as he does any other account payable by the county. As owner of the telephone company, he also accepts payment of these accounts by the county.

"Relative to officers official bonds:

"The County Auditor is the representative of a bonding company who acts as surety for the county officers. The Auditor prepares the bonds and collects the premium thereon from the officers or charges the amount to the proper fund.

"The bonds of the Sheriff-tax assessor-collector, County Judge, County-District Clerk and County Attorney are paid for out of the fees of office. The bonds for the County Treasurer, Auditor and County Commissioners are paid out of the General Fund.

"Relative to question No. 5:

"It seems that the county is attempting to carry some sort of a modified form of Compensation insurance on its employees. This was done before I came into office and I have never been consulted on the matter. I have recently learned that a year or so ago the county entered into an agreement with an insurance company to insure the employees of the county against injury while in the course of their employment with the county. It seems that this was done by means of a rider attached to a standard compensation insurance form. I am advised that the county and the insurance company knew at the time the agreement was made that the county could not legally cover their employees with regular compensation insurance. However, out

of the Courts desire to protect the county employees from loss from injury, this agreement was made.  The insurance company agreed to pay the employee, in case of injury, in same manner and in the same amounts as are provided under regular compensation insurance.

"This insurance is paid for partly out of the General Fund and partly out of the Road and Bridge Fund.

"The auditor represents the company that writes the policy, and he approves the claims and accepts the payment of same.

"The county is carrying regular public liability and property damage insurance on county owned and operated equipment.  This insurance covers  damages to persons and property occasioned by the operation of county owned trucks by county employees.  The premium on this insurance is paid out of the Road and Bridge Fund.

"The Auditor represents this company and handles the claims in the manner as he does the insurance for the employees.

"I am unable to say upon what authority the court relies to expend county funds for these purposes.  I would like to know whether or not the Court has legal authority to expend county funds for such purposes."

Article 1649, V.C.S., provides:

"The auditor shall, within twenty days of his appointment, and before he enters upon the duties of his office, make a bond with two or more good and sufficient sureties, in the sum of five thousand dollars, payable to the county judge, conditioned for the faithful performance of his duties, to be approved by the commissioners court.  He shall also take the official oath and an additional one in writing, stating that he is in every way qualified under the provisions and requirements of this title, and giving fully the positions of

private or public trust he has heretofore held, and the length of service under each. He shall further include in his oath that he will not personally be interested in any contract with the county." (Emphasis ours)

We quote the following from American Indemnity Company v. Red River National Bank in Clarksville, 132 S.W. (2d) 473:

"Article 1645 provides that in certain counties 'there shall be biennially appointed an auditor of accounts and finances, the title of said officer to be county auditor.' Article 1648 prescribes the qualifications required of such officer. Article 1649 requires that he shall take the regular oath of office and a special oath, and shall execute a bond in the sum of $5,000 conditioned for the faithful performance of his duties. . . .

"He is by the statute made an officer of the county, in whom is vested the authority and it is made his duty to examine and if found correct to approve the tax collector's reports and stamp his approval thereon. . ." (Emphasis ours)

In view of the foregoing, it is our opinion that the county auditor is "an officer of the county" and subject to the provisions of Article 373, V.P.C., which read as follows:

"If any officer of any county, or of any city or town shall become in any manner pecuniarily interested in any contracts made by such county, city or town, through its agents, or otherwise, for the construction or repair of any bridge, road, street, alley or house, or any other work undertaken by such county, city or town, or shall become interested in any bid or proposal for such work or in the purchase or sale of anything made for or on account of such county, city or town, or who shall contract for or receive any money or property, or the representative of either, or any emolument or

advantage whatsoever in consideration of such bid, proposal, contract, <u>purchase or sale</u>, he shall be fined not less than fifty nor more than five hundred dollars." (Emphasis ours)

In construing the Article 373, the Court held in the case of Rigby v. State, 27 Cr. R. 55, 10 S.W. 760, that this Article inhibits any officer of a county from entering into, on account of himself, any kind of financial transaction with the county. We quote the following from said case:

"It is contended by the defendant that the article of the Penal Code above quoted does not inhibit a county officer from selling property to the county, unless such property was made for or on account of such county; that the word 'made,' in said article, refers to the word 'anything,' and not to the words 'purchase or sale.' We do not agree to such construction of the article. We admit that the language of that portion of the said article, when considered without reference to the context, or without inquiry as to the legislative intent, would warrant the interpretation contended for by defendant; but when viewed in connection with the context, and with reference to the purpose which the legislature intended to effect by the enactment of the statute, such an interpretation would, in our judgment, be too restricted, if not strained and unreasonable. Manifestly, the legislature, in enacting the statute, intended thereby to protect counties, cities, and towns from official peculation. Such peculation was the evil sought to be suppressed; and the statute strikes at the very root of the evil, by making it an offense for any officer of a county, city, or town to become interested pecuniarily in matters wherein such corporations are pecuniarily interested. The purpose of such statute is to prevent official 'rings' from being formed and operated to prey upon the treasuries of counties, cities, and towns; to prevent the officers of such corporations from using their official knowledge and influence to their individual pecuniary advantage in the financial transactions of

such.  The objects of the statute would be but partially attained if such officers are to be permitted to deal with their corporations in the sale and purchase of property."

It is therefore the opinion of this office, under the facts submitted, that the county auditor is not authorized to contract with the county to furnish the various services and property outlined in Questions Nos. 1 and 3.  The same answer applies to any contracts lawfully made with payment from county funds under Question 2.

Relative to your fourth question as to whether the county auditor is authorized to approve for payment a warrant issued to his brother-in-law for services rendered to the county, Article 432, V.P.C., provides as follows:

"No officer of this state or any officer of any district, county, city, precinct, school district, or other municipal subdivision of this state, or any officer or member of any state, district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any general or special law of this state, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatsoever."

Since the county auditor did not employ, appoint, vote for, or confirm the appointment of his brother-in-law, you are advised that it is our opinion that the county auditor is authorized to approve for payment a warrant issued to his brother-in-law for services rendered to the county.

It is a well settled rule of law that the county is not liable for injuries sustained in the consequence of tortious or negligent acts of its agents or employees unless the liability therefor be created by statute; it is also a well settled rule of law that the county is not liable for the acts of its officers where such acts are not performed in connection with their official duties. See Nussbaum v. Bell County, 76 S.W. 430; Angelina County v. Bond, 17 S.W. (2d) 338; Floria v. Galveston County, 55 S.W. 540; and Bryan v. Liberty County, 299 S.W. 303.

It has been repeatedly held by this office that the Commissioners' Court has no authority to contract for compensation insurance for its employees or for public liability insurance. Attorney General Opinions Nos. O-353, O-1922 and O-5315. In answer to your fifth question, it is our opinion that the county can not contract for compensation insurance for its employees or for public liability insurance. It is further our opinion that the county auditor is not authorized to contract with the county for any insurance, and that such contract would be in violation of Article 373, V.P.C.

## SUMMARY

A county auditor is forbidden by law from having a personal interest in any contract with the county. Art. 1649, V.C.S.; 373 Penal Code.

A brother-in-law of the county auditor is not prohibited by the nepotism law from being employed by the county, and the county auditor is authorized to approve for payment a warrant issued to his brother-in-law for services rendered to the county. Art. 432, V.P.C.

APPROVED:

*Price Daniel*

ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *John Reeves*
John Reeves
Assistant

JR:djm